IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**CRIME VICTIMS R.S. AND S.E.**,
*Petitioners*,

*v.*

**HON. PETER A. THOMPSON, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA**,
*Respondent Judge*,

**TEDDY CARL VANDERS**,
*Real Party in Interest.*

No. CR-19-0395-PR
Filed April 29, 2021

Appeal from the Superior Court in Maricopa County
The Honorable Peter A. Thompson, Judge
No. CR2017-132367-001
**AFFIRMED**

Opinion of the Court of Appeals, Division One
247 Ariz. 575 (App. 2019)
**VACATED**

COUNSEL:

Jamie Balson (argued), Legal Services for Crime Victims in Arizona, Sun City, Attorney for R. S. and S. E.

Rosemarie Pena-Lynch, Legal Advocate, Grace M. Guisewite (argued), Elyse Fune, Deputy Legal Advocates, Maricopa County Office of the Legal Advocate, Phoenix, Attorneys for Teddy Carl Vanders

Brian Thredgold (argued), Arizona Attorneys for Criminal Justice, Phoenix, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

Colleen Clase, Robert Swinford, Arizona Voice for Crime Victims & National Crime Victim Law Institute, Phoenix, Attorneys for Amicus

Curiae Arizona Voice for Crime Victims & National Crime Victim Law Institute

Allister Adel, Maricopa County Attorney, Robert E. Prather, Deputy County Attorney, Phoenix, Attorneys for Amicus Curiae The Maricopa County Attorney

Mark Brnovich, Arizona Attorney General, Linley Wilson, Chief Counsel, Jillian B. Francis, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General

David J. Euchner, Lauren K. Beall, Tucson, Attorneys for Amicus Curiae Pima County Public Defender's Office

---

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, BEENE, and PELANDER (RETIRED)[*] joined[**].

---

JUSTICE LOPEZ, opinion of the Court:

¶1        We hold that when a criminal defendant's due process right to present a complete defense conflicts with a victim's state constitutional or statutory rights governing privileged mental health records, the victim may be compelled to produce such documents for in-camera review if the defendant shows a reasonable possibility that the information sought includes evidence that would be material to the defense or necessary to cross-examine a witness.

---

[*] Justice William G. Montgomery has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable John Pelander, Justice of the Arizona Supreme Court (Ret.), was designated to sit in this matter.

[**] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

## BACKGROUND

¶2         Teddy Carl Vanders is charged with second-degree murder for killing his girlfriend, M.S., during a domestic dispute. In a 911 call placed at the time of the incident, Vanders told the operator that he shot M.S. because she was crawling around, "acting evil," and had abused and threatened him for years. He also stated that M.S. was previously admitted to a mental hospital and that he believed she had been diagnosed with a mental illness.

¶3         Before trial, Vanders moved to compel Magellan Hospital to disclose, for in-camera review, M.S.'s privileged mental health records from a visit six years before her death. The records stem from a 2011 domestic dispute between M.S. and Vanders, during which M.S. indicated she wanted to kill herself, and then assaulted Vanders before being taken by police to Magellan Hospital where she told staff she wanted to talk about suicidal ideations. Vanders argues that the records are essential to his justification defense and to his ability to effectively examine witnesses. Specifically, Vanders intends to show that he was afraid of M.S., that she had previously assaulted him on multiple occasions, and that a reasonable person in his position would have feared for his life.

¶4         The trial court ruled that Vanders' due process rights required disclosure of M.S.'s privileged records for in-camera review, relying on *State ex rel. Romley v. Superior Court* (*Roper*), which allowed the defendant to seek in-camera review of the victim's physician-patient privileged records in light of the due process right to present a complete defense. 172 Ariz. 232, 240–41 (App. 1992). M.S.'s siblings, as victims (collectively, "Victims") under Arizona's Victims' Bill of Rights ("VBR"), filed a special action challenging the ruling.

¶5         In the special action, Victims argued that M.S.'s records are protected under both the VBR and the statutory physician-patient privilege, A.R.S. § 13-4062(4), and contended that Vanders cannot establish a superseding constitutional right to the protected records. The court of appeals accepted jurisdiction and agreed, concluding that Vanders could only establish a rule-based right to the documents under Arizona Rule of Criminal Procedure 15.1(g). *R.S. v. Thompson*, 247 Ariz. 575, 578 ¶ 10 (App. 2019). The court then reasoned that when a defendant's rule-based right to demand documents conflicts with a victim's statutory physician-patient privilege, the statute must prevail. *Id.* at 579 ¶ 12.

¶6 The court of appeals declined to embrace *Roper*'s "broad extension of a defendant's right to present a complete defense," *see id.* at 579–81 ¶¶ 14, 18–20, and determined there was no binding precedent that "held that a defendant's due process right to a fair trial evolves into a general constitutional right to discovery, which could then work to overcome an individual's physician-patient privilege," *id.* at 580 ¶ 19.

¶7 The court also found that the "reasonable possibility" standard for in-camera review—extracted by the court in *State v. Connor*, 215 Ariz. 553, 558 ¶ 10 (App. 2007), from *Roper*'s view of a defendant's constitutional right to discover privileged records—was inadequate. *Id.* at 581–82 ¶¶ 23–24. Instead, the court held that a defendant is entitled to in-camera review of privileged records not subject to *Brady v. Maryland*, 373 U.S. 83 (1963), when the defendant demonstrates (1) a *substantial probability* that the protected records contain information that is trustworthy and critical to an element of the charge or defense or (2) that their unavailability would result in a fundamentally unfair trial. *Id.* at 577 ¶ 3. The court then concluded that Vanders had not demonstrated the necessary substantial probability that the records from Magellan Hospital contain information critical to his justification defense. *Id.* at 582–83 ¶¶ 27–28. Consequently, the court granted relief, and Vanders petitioned this Court for review.

¶8 After the court of appeals' decision in this case, another panel of that court declined to follow the more stringent "substantial probability" standard, creating a split between divisions in our appellate court. *See Fox-Embrey v. Neal*, 249 Ariz. 162, 171 ¶ 27 n.4 (App. 2020). In *Fox-Embrey*, the court applied the standard articulated by *Roper*, *Connor*, and their progeny:

> When a defendant's due process right to a meaningful opportunity to present a defense directly conflicts with the victim's rights under the VBR, the victim may be compelled to produce treatment records for in camera inspection if the defendant shows a *reasonable possibility* that the information sought includes information the defendant is entitled to as a matter of due process.

*Id.* at 170 ¶ 23 (cleaned up) (emphasis added).

¶9 We granted review to resolve this split and to determine the appropriate standard a criminal defendant must meet to obtain in-camera

review of a victim's privileged mental health records—a recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶10         Whether a defendant's due process right to present a complete defense permits in-camera review of a victim's privileged records upon demonstrating a reasonable possibility that the documents contain evidence necessary to vindicate that right is a matter of constitutional and statutory interpretation that we review de novo. *See State v. Hegyi*, 242 Ariz. 415, 416 ¶ 7 (2017).

## I.

¶11         We first consider the scope of a criminal defendant's due process rights under these circumstances. Victims argue that Vanders does not have any countervailing constitutional right that would supersede their rights under the VBR and the physician-patient statutory privilege. We disagree.

¶12         A trial court may order third parties to produce information not in the possession of the prosecutor when the defendant demonstrates (1) a substantial need in the preparation of the defendant's case for the information and (2) that the defendant is unable to obtain the substantial equivalent by other means without undue hardship. Ariz. R. Crim. P. 15.1(g). However, when production of the evidence would infringe a victim's constitutional and statutory privileges, the defendant must first "demonstrate that his 'substantial need' for the information would . . . amount to one of constitutional dimension." *Connor*, 215 Ariz. at 561 ¶ 22. If the defendant makes this showing, the trial court must balance the competing rights and interests of the defendant and the victims and may order production of the information for its in-camera review. *Id.* "If the court then determines any disclosure is necessary, it may then carefully circumscribe the disclosure to the extent permissible consistent with the defendant's exercise of the constitutional right to a fair trial." *Id.* We next turn to the relevant jurisprudence describing the substance of a defendant's due process rights.

¶13         Due process requires that a defendant receive a fundamentally fair trial, including a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether

rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (internal citations and quotation marks omitted)); *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (noting that a defendant has a due process right to defend against the state's accusations); *see also Roper*, 172 Ariz. at 236 ("[C]oncomitant with the Arizona Victim's Bill of Rights, the defendant has a due process right, under the federal and Arizona constitutions, to present a defense."); *Connor*, 215 Ariz. at 558 ¶ 12 (same).

**¶14**         "[T]he denial of due process is a denial of fundamental fairness, shocking to the universal sense of justice," *Oshrin v. Coulter*, 142 Ariz. 109, 111 (1984) (internal citations and quotation marks omitted), and our ultimate goal is to further the truth-seeking function of judicial proceedings, *see Taylor v. Illinois*, 484 U.S. 400, 414–15 (1988); *Chambers*, 410 U.S. at 295. Moreover, the legitimate needs of fairness may outweigh an absolute privilege. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 709–13 (1974) (finding that the absolute executive privilege did not trump a demonstrated, specific need for evidence in a pending criminal trial).

**¶15**         Vanders concedes that he does not have a general constitutional right to pretrial disclosure, *see Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), and *Roper* did not convey such a right, *see* 172 Ariz. at 240 (agreeing with the plurality in *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987), that confrontation clause rights "do not afford criminal defendants a right to pretrial discovery"). Indeed, *Roper* "did not authorize a wholesale production of the victim's medical records to the defendant." *Connor*, 215 Ariz. at 557 ¶ 8. And "neither *Roper* nor *Connor* supports the view that the [VBR] must give way in every case in which a defendant merely articulates some plausible reason why treatment records might contain something exculpatory." *State v. Kellywood*, 246 Ariz. 45, 48 ¶ 11 (App. 2018).

**¶16**         We acknowledge these limitations, and our holding today does not create a general constitutional right to discovery. But, "[t]he very integrity of the judicial system and public confidence in the system depend

on full disclosure of all the facts," *Nixon*, 418 U.S. at 709, and "if a trial court excludes essential evidence, thereby precluding a defendant from presenting a theory of defense, the trial court's decision results in a denial of the defendant's right to due process that is not harmless," *Roper*, 172 Ariz. at 236. Thus, the due process right to present a complete defense is vitiated if a defendant is prevented access at the pretrial discovery stage to the "raw materials" necessary to build his defense, rendering his trial fundamentally unfair.

¶17        Here, Vanders has a countervailing constitutional right to access privileged victim records. Consequently, any restrictions imposed by the VBR or statute on his access to information essential for the effective preparation of a complete defense must be balanced against this due process right to a fundamentally fair trial.

## II.

¶18        We next consider the scope of crime victims' rights. Arizona's VBR broadly recognizes that victims are entitled "[t]o be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process," Ariz. Const. art. II, § 2.1(A)(1), and accords victims the right "[t]o refuse an interview, deposition, or other discovery request by the defendant," *id.* § 2.1(A)(5). "The VBR and its implementing legislation were adopted to provide crime victims with basic rights of respect, protection, participation and to aid the healing of their ordeals," *J.D. v. Hegyi*, 236 Ariz. 39, 42 ¶ 16 (2014) (internal citation and quotation marks omitted), and "[t]he legislature also directed that the implementing legislation be liberally construed to preserve and protect the rights to which victims are entitled," *id.* ¶ 14 (internal quotation marks omitted).

¶19        A crime victim's right to refuse a discovery request generally includes the right to refuse to disclose medical records, *State v. Sarullo*, 219 Ariz. 431, 437 ¶ 20 (App. 2008), which are also protected by statutory privileges, *see* A.R.S. § 13-4062(4) (prohibiting examination of "[a] physician or surgeon, without consent of the physician's or surgeon's patient, as to any information acquired in attending the patient which was necessary to enable the physician or surgeon to prescribe or act for the patient"); A.R.S. § 32-2085(A) (establishing psychologist-patient privilege).

**¶20** The VBR and statutory privileges are thus powerful counterbalances to defendants' rights. However, federal constitutional rights trump state constitutional and statutory rights, U.S. Const. art. VI ("This Constitution, and the Laws of the United States which shall be made . . . under the Authority of the United States, shall be the supreme Law of the Land . . . ."), and a victim's right to refuse discovery under the VBR is not absolute, *Kellywood*, 246 Ariz. at 47 ¶ 8; *see also Roper*, 172 Ariz. at 241 ("[The VBR] should not be a sword in the hands of victims to thwart a defendant's ability to effectively present a legitimate defense."). Crucially, when a defendant's due process right to present a complete defense (and ultimately, to a fair trial) and a victim's state constitutional or statutory rights directly conflict, the due process right prevails. *See State v. Riggs*, 189 Ariz. 327, 330–31 (1997) (citing *Roper*, 172 Ariz. at 236); *see also Morehart v. Barton*, 226 Ariz. 510, 516 ¶ 23 (2011) (directing trial courts to enforce victims' rights unless the result would deprive the defendant of a fair trial); *State v. Bible*, 175 Ariz. 549, 602–03 (1993) ("It cannot be doubted that victims of crime, and their families, have certain rights. It is equally clear, however, that these rights do not, and cannot, conflict with a defendant's right to a fair trial." (internal citations omitted)).

**¶21** A victim does not have an absolute privilege against disclosure of private records, nor does a defendant have an unqualified right to obtain those records for use at trial in every circumstance. Consequently, the rights of the defendant and victims are not necessarily mutually exclusive. In exercising its discretion, a court must strike a balance between the competing interests of a victim's privilege and a defendant's federal constitutional rights to procure and present evidence necessary to construct a complete defense. Thus, a victim's right to refuse discovery must yield when a defendant makes the requisite constitutional showing of need for the information, which we now delineate.

### III.

**¶22** We next consider the evolution of the reasonable possibility standard and the merits of adopting it as the appropriate measure by which to determine a defendant's right to an in-camera review of a victim's privileged mental health records.

**¶23** In *Connor*, the court of appeals expanded on *Roper*'s instruction to balance victims' and defendants' competing rights; specifically, it directed trial courts to allow in-camera review of privileged

records when the defendant demonstrates a *reasonable possibility* that the requested information includes evidence to which he is entitled as a matter of due process. *Connor*, 215 Ariz. at 558 ¶ 10. *Connor* also required that a defendant present a "sufficiently specific basis" before disclosure of a victim's medical records for in-camera review. *See id.* ¶ 11. Later, *Kellywood* clarified that "[i]n light of the competing constitutional interests, as well as the ordinarily privileged nature of patient-provider communications, . . . the burden of demonstrating a 'reasonable possibility' is not insubstantial, and necessarily requires more than conclusory assertions or speculation on the part of the requesting party." 246 Ariz. at 48 ¶ 9; *see also Fox-Embrey*, 249 Ariz. at 170–71 ¶¶ 23–27 (discussing subsequent cases applying this standard).

¶24 Contrary to Victims' contentions, the reasonable possibility standard is comprehensible and workable. Importantly, it does not trigger immediate disclosure of victims' protected records. Instead, it balances victims' non-disclosure rights with defendants' rights to critical information in the pretrial discovery stage of a criminal case by allowing in-camera review of privileged victim information by a neutral court upon a defendant's showing of constitutional need. Although an in-camera review undoubtedly is an intrusion into confidential records, *Kellywood*, 246 Ariz. at 49 ¶ 14, as the court of appeals acknowledged, it is inherently less intrusive than disclosure to defendants, *R.S.*, 247 Ariz. at 582 ¶ 24; *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) (concluding that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege" because a defendant who meets the standard does not automatically gain access to the records). Here, M.S.'s records will not be disclosed to Vanders unless the trial court determines, after in-camera review, that they contain information essential to Vanders' right to present a complete defense.

¶25 The reasonable possibility standard is also consistent with our approach to balancing the state's interest in investigating potential crime with a defendant's right to counsel embodied in the attorney-client privilege. *See Clements v. Bernini*, 249 Ariz. 434, 438 ¶ 1 (2020). In *Clements*, we held that the state was entitled to an in-camera inspection of an inmate's recorded jail calls to determine whether an exception to the attorney-client privilege applied if it demonstrated "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* (quoting *Zolin*, 491 U.S. at 572).

¶26 The court of appeals' substantial probability standard announced in this case, on the other hand, seems better suited to a disclosure rule rather than as a benchmark for in-camera review. Consequently, it is unworkable because it effectively requires a defendant to know the contents of the requested documents as a prerequisite for in-camera review. The court reasoned that a defendant's due process rights should triumph "only in the exceptional case" and indicated that trial courts "must start with a strong presumption" that the statutory privilege prevents access to the information it protects. *R.S.*, 247 Ariz. at 581–82 ¶¶ 21, 25. But the substantial probability standard goes too far as it effectively forecloses in-camera review in all circumstances. The reasonable possibility standard, by comparison, reasonably protects a victim's privacy interests but does so without infringing a defendant's right to obtain information necessary to present a complete defense.

¶27 The reasonable possibility standard also preserves trial courts' gatekeeper function in balancing the competing interests of privacy and access to the raw materials necessary to present a complete defense. Our trial courts are adept at this function, and we discern no reason to jettison this gatekeeper role. Indeed, victims routinely succeed in maintaining confidentiality of records despite defendants' motions for in-camera review of privileged information. *See, e.g.*, *Sarullo*, 219 Ariz. at 437 ¶ 21 (concluding that defendant failed to meet his burden because he provided no reason to believe the records would contain exculpatory evidence); *Kellywood*, 246 Ariz. at 47 ¶ 6 (finding that the mere possibility that the victim might have said something exculpatory is insufficient, as a matter of law, to require her to produce the medical and counseling records the defendant sought); *State v. Dunbar*, 249 Ariz. 37, 49 ¶ 29 (App. 2020) (reasoning that the unlimited nature of the defendant's request—that is, for all of the victim's mental health records spanning over fifteen years from three different states, with no request for only the information necessary for his defense—gave the trial court a sufficient reason to deny the motion without abusing its discretion).

¶28 The court of appeals and Victims contend that although courts currently invoke the reasonable possibility standard, in practice they apply a more rigorous test. We disagree. That defendants often fail to satisfy their burden for in-camera review of victims' privileged records—as in cases like *Sarullo*, *Kellywood*, and *Dunbar*—does not demonstrate that

10

courts are effectively applying a more rigorous standard akin to the court of appeals' substantial probability test. Instead, in those cases, the defendants failed to satisfy the reasonable possibility standard because they sought access to privileged documents indiscriminately or based merely on speculation that they might include exculpatory or useful information.

¶29 Our adoption of the reasonable possibility standard is in accord with the prevailing approach of other states. Indeed, the majority of states that have considered the issue require defendants seeking in-camera review to articulate a basis sufficient to support a reasonable belief that protected records contain exculpatory information. *See Commonwealth v. Barroso*, 122 S.W.3d 554, 561–64 (Ky. 2003) (collecting cases); *State v. Green*, 646 N.W.2d 298, 309 ¶ 32 (Wis. 2002) (collecting cases and holding, "consistent with other state standards, that a defendant must show a 'reasonable likelihood' that the records will be necessary to a determination of guilt or innocence"); *State v. Thompson*, 836 N.W.2d 470, 485 (Iowa 2013) (same). These courts generally recognize the unremarkable principle we embrace here: "the purpose of pretrial discovery is to ensure a fair trial[,] [and] [a] criminal trial where the defendant does not have access to the raw materials integral to the building of an effective defense is fundamentally unfair." *State in Interest of A.B.*, 99 A.3d 782, 790 (N.J. 2014) (internal citation and quotation marks omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) ("We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense.").

¶30 We hold that the reasonable possibility standard applies to determine a defendant's right to in-camera review of a victim's privileged mental health records. A defendant must demonstrate a constitutional entitlement to such information in order to present a complete defense by first showing a reasonable possibility that the information sought includes evidence that would be material to the defense or necessary to cross-examine a witness. The defendant's request must be based on more than mere speculation and must include a sufficiently specific basis to deter fishing expeditions, prevent a wholesale production of the victim's medical records, and adequately protect the parties' competing interests.

**IV.**

¶**31**         We now apply the reasonable possibility standard to Vanders' request for in-camera review of M.S.'s Magellan Hospital records.

¶**32**         Pursuant to A.R.S. §§ 13-404 and 13-405, a person is justified in using deadly physical force against another when and to the extent a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force. Additionally, under A.R.S. § 13-415, "the state of mind of a reasonable person . . . shall be determined from the perspective of a reasonable person who has been a victim of those past acts of domestic violence."

¶**33**         When a defendant raises a justification defense, he is entitled to offer proof of the victim's reputation for violence. *Connor*, 215 Ariz. at 558–59 ¶ 13; Ariz. R. Evid. 404(a)(2), 405. "Arizona courts have long held that a homicide defendant who offers a defense of justification 'should be permitted to introduce evidence of specific acts of violence by the deceased if the defendant either observed the acts himself or was informed of the acts before the homicide.'" *Connor*, 215 Ariz. at 559 ¶ 14 (quoting *State v. Taylor*, 169 Ariz. 121, 124 (1991)). "The reason courts permit this evidence in such circumstances is 'to show that the defendant was justifiably apprehensive of the decedent and knew that the decedent had a violent disposition,' and that this may have affected the defendant's thinking about the need to respond with deadly physical force." *Id.* (quoting *Taylor*, 169 Ariz. at 124).

¶**34**         There is a reasonable possibility that the information Vanders seeks stemming from the 2011 incident and the attendant medical records created by Magellan Hospital may shed light on M.S.'s character for violence and corroborate Vanders' version of the events. *See, e.g.*, *Taylor*, 169 Ariz. at 124 (allowing defendant to argue that he knew of the victim's prior conviction for child abuse, which was relevant to demonstrate the defendant's state of mind, because he believed the victim to be violent); *State v. Fish*, 222 Ariz. 109, 114 ¶ 9 (App. 2009) (admitting evidence of victim's other acts of violence, which all involved the victim becoming "irrationally aggressive and threatening" with "a wild look in his eyes" and "thrashing the air as if to attack the person" when confronted about his dogs, and where the facts of those acts were extremely similar to the defendant's description of the victim); *Roper*, 172 Ariz. at 237 (reasoning that defendant's assertions that her husband had multiple personalities and

that she had stabbed him in self-defense when he was attacking her were buttressed by her husband's multiple arrests, at least one conviction for domestic violence in which the defendant had been the victim, her husband's extensive psychiatric treatment over the years, and the fact that it had been the defendant who made the 911 call requesting help on the night of the stabbing).

¶35    Vanders described M.S.'s conduct in the 911 call immediately after the shooting and indicated he thought she had been previously diagnosed with a mental illness. His knowledge of her prior hospitalization arising from the 2011 domestic violence incident and his belief that she had been diagnosed with a mental illness relate to whether he was justifiably apprehensive for his own safety at the time of the altercation. This is true even if Vanders did not know M.S.'s specific diagnosis, if any. Notably, the substance of the medical records may elaborate on these prior acts of violence, which potentially are inseparable from any attendant diagnosis. Upon in-camera review, the trial court will determine whether these records provide independent corroboration of Vanders' claim that M.S. had previously been violent toward him, whether M.S. had a diagnosis that sheds light on any character for violence, whether Vanders did, in fact, fear for his life, and whether his fear was well-founded.

¶36    We conclude that the trial court did not abuse its discretion in ordering the in-camera inspection of M.S.'s records. Unlike the sweeping or generalized discovery requests in *Sarullo*, *Kellywood*, and *Dunbar*, Vanders has identified the relevant documents, the entity that possesses them, the specific date of the documents, and the information likely to exist in them. These are sufficient, document-specific facts that establish a reasonable possibility the requested information is material to Vanders' justification defense—the core of his complete defense—and could cast doubt on his guilt.

¶37    The court of appeals asserted that Vanders failed to "articulate how diagnosis of [M.S.'s] mental health condition from six years earlier would make his case or break the state's case," *R.S.*, 247 Ariz. at 583 ¶ 28, and that any evidence of a prior mental health diagnosis would merely be cumulative, *see id.* We disagree. A record of M.S.'s purported mental illness, including a diagnosis following a domestic violence incident similar to the one resulting in M.S.'s death, would be material to Vanders' justification defense because it would establish M.S.'s mental illness and her propensity for violence and thus bolster the defense; without it, Vanders'

assertion about M.S.'s mental health issues and his resulting fear of her could otherwise be dismissed as his self-serving opinion. The import of such information is self-evident and of constitutional magnitude, and its qualitative difference exceeds any reasonable characterization as mere cumulative evidence.

## CONCLUSION

¶38      For the reasons set forth above, we vacate the court of appeals' opinion and affirm the trial court's ruling ordering in-camera review, pursuant to Rule 15.1(g), of M.S.'s Magellan Hospital records.