NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA,
*Appellee*,

*v.*

JERRY GILLIGAN,
*Appellant.*

No. 1 CA-CR 20-0617
FILED 3-8-2022

---

Appeal from the Superior Court in Mohave County
No. S8015CR201601305
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

_____

**W E I N Z W E I G**, Judge:

¶1        Jerry Gilligan appeals his felony convictions and sentences for three counts of sexual conduct with a minor under 12, two counts of kidnapping, two counts of sexual assault, two counts of aggravated assault and one count of sexual exploitation of a minor.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        We view, and thus recount, the facts in the light most favorable to sustaining the jury's verdicts.  *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶3        Gilligan met and married the first victim ("Wife") in 2014.  He was in his late sixties and just released from prison.  Wife was 36 years old and had a 10-year-old son, the second victim.  Months later, Gilligan and his victims moved into the same home.

¶4        Almost immediately, Gilligan sexually abused the child, and the abuse continued until September 2016, when Wife caught Gilligan in the act.  An argument ensued, unleashing four days of terror.  Gilligan threatened to kill both of his victims if either left the home.  He beat Wife with a wooden rod, tased her in the chest, bound her and the child with ropes, used a syringe to inject battery acid into her eyes, and threatened to cut her genitals with a knife.  And it got worse.  We spare the haunting details, but Gilligan forced his victims at knifepoint to perform sexual acts on one another.  He recorded nearly four minutes of this unimaginable horror on Wife's cellphone, which ends when he turns the camera on himself.  Gilligan later shaved his victims' heads and tried forcing methamphetamine down Wife's throat.

¶5        After four days, Wife convinced Gilligan that she needed medical treatment for her eye injuries, so Gilligan accompanied her to the emergency room.  A nursing assistant examined Wife, whom she described as "very scared" and "nervous."  A nurse asked Wife about her eye injuries,

but Gilligan answered for Wife in an "aggressive" tone. Wife twice whispered for hospital staff to call the police.

¶6 Kingman police were contacted, and Officer Huerta responded to the emergency room, where he met Wife and Gilligan. He described Wife as "look[ing] terrified." He asked Gilligan to wait in the hospital lobby so he could interview Wife alone. Once Gilligan left, Wife urgently told the officer what had happened and showed him some of her injuries. Wife added that her child, the second victim, was at home alone. Officer Huerta radioed for backup. He also asked the hospital staff to ensure Gilligan did not leave the building. Gilligan had already left the hospital building and was driving home, but a second police officer apprehended him.

¶7 Kingman police later searched the home and found copious evidence to incriminate Gilligan. Police located video evidence of Gilligan's sexual abuse on Wife's cell phone. Police interviewed the stepson, who confirmed the abuse. Gilligan denied it all. Confronted with the video evidence, Gilligan claimed police had it backwards: He caught Wife sexually abusing her son and recorded it. At the same time, he admitted having "blank[-]out" periods and said he might have been high on drugs.

¶8 The State ultimately charged Gilligan with 18 felony counts. The jury convicted him of 10 counts, including three counts of sexual conduct with a minor, two counts of kidnapping, two counts of sexual assault, two counts of aggravated assault and one count of sexual exploitation of a minor by domestic violence. It found seven of the counts to be dangerous crimes against children, and three counts to be dangerous offenses. The jury found all counts to be domestic violence offenses. The superior court sentenced Gilligan to three consecutive terms of life imprisonment, along with a consecutive aggregate term of 62.5 years' imprisonment. Gilligan appeals his conviction and sentences. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

## DISCUSSION

¶9 Gilligan raises four issues on appeal.

### I. Preclusion of Evidence

¶10 Gilligan first contends the superior court erroneously excluded evidence that Wife had falsely accused her stepfather of sexual assault and acted in "homemade amateur pornography." We review the

court's ruling on the admissibility of evidence for an abuse of discretion, *State v. Herrera*, 232 Ariz. 536, 549, ¶ 38 (App. 2013), and may affirm the ruling on any basis supported by the record, *State v. Robinson*, 153 Ariz. 191, 199 (1987). Constitutional issues are reviewed de novo. *State v. Goudeau*, 239 Ariz. 421, 440, ¶ 35 (2016).

**¶11** Arizona's rape-shield statute generally prohibits a criminal defendant from introducing evidence at trial "relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity." A.R.S. § 13-1421. The statute "protect[s] victims of rape from being exposed at trial to harassing or irrelevant questions concerning any past sexual behavior." *State v. Gilfillan*, 196 Ariz. 396, 400–01, ¶¶ 15–16 (App. 2000), *overruled on other grounds by State v. Carson*, 243 Ariz. 463, 465–66, ¶¶ 10–13 (2018). The rape-shield statute identifies "five exceptions to this broad ban," *id.* at 401, ¶ 16, which permit the admission of "[e]vidence of specific instances of the victim's prior sexual conduct," A.R.S. § 13-1421(A).

**¶12** Gilligan contends that Wife's prior rape accusations and homemade pornography should have been admitted as evidence under two exceptions: (1) "[e]vidence of false allegations of sexual misconduct made by the victim against others," and (2) "[e]vidence that supports a claim that the victim has a motive in accusing the defendant of the crime." *See* A.R.S. § 13-1421(A)(3), (5). Both exceptions require the defendant to offer clear and convincing evidence that (1) the exception applies, (2) the proposed evidence is relevant and "material to a fact in issue," and (3) "the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence." *See* A.R.S. § 13-1421(A), (B). The court determines whether an exception applies "after a hearing on written motions" to ensure "procedural safeguards to reduce inaccuracies and prejudicial evidence," protecting victims from "harassing or irrelevant questions concerning any past sexual behavior." *Gilfillan*, 196 Ariz. at 403, ¶¶ 21, 22.

**¶13** The superior court did not err. It appropriately excluded proposed evidence that Wife "falsely accused" her stepfather of rape in 2014 because Gilligan presented no evidence, much less clear and convincing evidence, that Wife ever accused her stepfather of rape. *Id.* at 404–05, ¶¶ 29–32. In the 2014 police report, Wife claimed her stepfather entered her room at night naked and tried to kiss her on the mouth. When law enforcement asked her if her stepfather had forced her to have sex with him, she said he never had. During the police interview, Wife confirmed having no clear memory of whether anything had occurred at the time. As for Wife's 2003 reports of sexual misconduct, Gilligan presented no

evidence the reports were "demonstrably false." *See State v. Hutchinson*, 141 Ariz. 583, 587 (App. 1984) (prior rape accusation made seven years ago was remote in time and defense could show no evidence it was unsubstantiated). Wife told police her stepfather had groped her breasts and entered her room in the middle of the night when she was about 20 years old. But nothing in the record proved that her allegation was false. The court properly excluded the evidence.

¶14        So too, it appropriately excluded evidence of Wife's prior "homemade amateur pornography." Gilligan contends this evidence proved Wife had a motive to fabricate the charges against him because she wanted to start her own pornography business and needed to "get [Gilligan] out of the way." Hardly. First, the evidence had no probative value on any material fact at issue. *See* Ariz. R. Evid. 403. The record shows no relationship or connection between Wife's private affairs and the shocking crimes of which Gilligan was charged, tried and convicted. *See State ex rel. Montgomery v. Duncan*, 228 Ariz. 514, 516, ¶ 7 (App. 2011). Second, the superior court occupies the best seat to balance probative value and unfair prejudice. *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998). Third, Gilligan did not meet the statute's procedural requirements. *See* A.R.S. § 13–1421(B) (requests must be made by written motion). And he never explained this failure. Discerning no error, we affirm.

## II.        Mental Health Records of the Victims

¶15        Gilligan next contends the superior court erroneously denied his motion to compel both victims to disclose their mental health records. We review evidentiary rulings for an abuse of discretion, *State v. Kellywood*, 246 Ariz. 45, 47, ¶ 5 (App. 2018), but review constitutional issues de novo, *R.S. v. Thompson,* 251 Ariz. 111, 116, ¶ 10 (2021).

¶16        As a threshold matter, Gilligan waived this issue on appeal because he never sought the records from the third parties who controlled them. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) ("If the argument is not raised below so as to allow the trial court [] an opportunity [to rule on it], it is waived on appeal.").

¶17        Even assuming he preserved the argument, it would be rejected because Gilligan does not begin to meet the requirements for disclosure. First, he neither demonstrated "a substantial need for the material or information to prepare" his defense, nor established he "cannot

obtain the substantial equivalent by other means without undue hardship." Ariz. R. Crim. P. 15.1(g)(1).

**¶18**     Second, his request was overbroad and unspecific, generally seeking "all relevant medical, educational, and mental health records" of the victims. *See State v. Dunbar*, 249 Ariz. 37, 49, ¶ 29 (App. 2020) (denial of motion to compel disclosure was proper where it failed to list providers, spanned over 15 years, and was not limited to information necessary to the defense).  He did not identify specific providers or agencies. *See id.*

**¶19**     Third, the Arizona Constitution enshrines a victim's right to refuse a criminal defendant's discovery request. *See* Ariz. Const. art. II, § 2.1(A)(5); *Thompson*, 251 Ariz. at 114, ¶ 19 ("A crime victim's right to refuse a discovery request generally includes the right to refuse to disclose medical records.").  When a defendant requests disclosure of a victim's medical records, this "will almost inevitably clash with a victim's rights." *Dunbar*, 249 Ariz. at 48, ¶ 26.  Gilligan does not explain how the evidence is relevant or why the court should disregard the victims' constitutional rights in favor of disclosure. *See Thompson*, 251 Ariz. at 114, ¶ 21 (defendant seeking privileged mental health records must make "requisite constitutional showing" to overcome victim's right to refuse disclosure).

## III.     Duplicitous Indictment

**¶20**     Gilligan next argues the superior court erroneously refused his request for a multiple acts jury instruction because the kidnapping counts were duplicitous.  We review the court's denial of a requested jury instruction for an abuse of discretion. *See State v. Bolton*, 182 Ariz. 290, 309 (1995).

**¶21**     If the state "charges two or more distinct and separate offenses in a single count," the superior court must take curative measures to prevent a nonunanimous verdict. *State v. Schroeder*, 167 Ariz. 47, 51 (App. 1990).  One measure is a multiple acts instruction, which informs "the jury that they must agree unanimously on a specific act that constitutes the crime before the defendant can be found guilty." *State v. Klokic*, 219 Ariz. 241, 244, ¶ 14 (App. 2008) (citation omitted).

**¶22**     A curative instruction is not needed, however, "when the defendant offers essentially the same defense to each of the acts and there is no reasonable basis for the jury to distinguish between them." *Id.* at 245, ¶ 18 (citation omitted).  In that event, the jury need not reach a "unanimous verdict on the precise manner in which the act was committed." *State v. Encinas*, 132 Ariz. 493, 496 (1982).

**¶23** The superior court did not abuse its discretion here because the kidnapping charges were not duplicitous. *See State v. O'Laughlin*, 239 Ariz. 398, 400, ¶ 5 (App. 2016). Gilligan was charged with two counts of kidnapping, one count per victim. The state presented evidence that he restrained each victim for the purpose of committing a series of sexual offenses. *See* A.R.S. § 13-1304(A)(3) (elements of kidnapping). Although Gilligan used various methods and degrees of restraint over several days, these acts could be considered part of a single criminal transaction. *See Klokic*, 219 Ariz. at 244, ¶ 15. Nor was Gilligan prevented from defending against each act. Second, the superior court did instruct the jury that each kidnapping count was "a separate and distinct offense," and informed the jury it had to reach a unanimous decision on "each count separately on the evidence." Third, the jury received different verdict forms for each kidnapping count. The jury was properly instructed, and we presume the jury followed its instructions to reach unanimous verdicts. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006).

## IV. Flight or Concealment Instruction

**¶24** Gilligan argues the superior court erred by giving the standard flight or concealment jury instruction. We review the court's decision to give a jury instruction for an abuse of discretion. *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014). The court may provide a jury instruction "on any theory reasonably supported by the evidence." *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998). We affirm. Given the overwhelming direct evidence against Gilligan presented to the jury, including video evidence, any error was harmless. *See State v. Anthony*, 218 Ariz. 439, 446, ¶ 41 (2008) ("We can find error harmless when the evidence against a defendant is so overwhelming that any reasonable jury could only have reached one conclusion.").

## CONCLUSION

**¶25** We affirm Gilligan's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

7