IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Petitioner*,

*v.*

THE HONORABLE MICHAEL S. MANDELL, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

DAMRRION JACQUIS MATTHEWS, *Real Party in Interest.*

No. 1 CA-SA 21-0211
FILED 4-19-2022

Petition for Special Action from the Superior Court in Maricopa County
No. CR2020-143883-001
The Honorable Michael S. Mandell, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Quinton S. Gregory
*Counsel for Petitioner*

Daniel R. Raynak PC, Phoenix
By Daniel R. Raynak
*Counsel for Real Party in Interest*

---

## OPINION

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

---

**S W A N N**, Judge:

**¶1**        In this criminal matter, the state seeks special action relief from an order that it produce a victim's mental health records for in-camera review.  We accept jurisdiction because there exists no adequate remedy by appeal.  We hold that the order should first have been directed to the victim instead of the state, and we grant relief because the defendant's generalized and speculative production request was insufficient to overcome the victim's constitutional and statutory rights.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Damrrion Jacquis Matthews ("Defendant") is charged with attempted armed robbery, aggravated assault, and misconduct involving weapons related to his shooting of a longtime acquaintance.

**¶3**        According to the state, and not disputed by Defendant, in the leadup to the shooting Defendant told a third-party witness that the victim was acting "crazy," the victim responded that he was not crazy, and Defendant replied that the victim was "a schizo" and crazy.  In police interviews, the victim's mother stated that the victim was developmentally delayed, and Defendant stated that something was wrong with the victim's "head."[1]  Defendant further stated that the victim's mental condition was "more wrong" and "different" on the day of the shooting, and described erratic and aggressive behavior by the victim.  Defendant noticed self-defense and justification as defenses.

**¶4**        Defendant moved the superior court to "have the listed victim be required to produce his mental health records" for an in-camera review on the basis that the victim's statements and conduct demonstrated mental impairment at the time of the shooting.  Over the state's objection, the court ordered the state to submit the victim's mental health records for an in-

---

[1]      We grant the state's November 8, 2021, motion asking us to accept the video recording of Defendant's interview.

camera review, holding that such review was necessary to preserve Defendant's due process rights.

**¶5**          The state moved for reconsideration, disclosing its communications with the victim about mental health records and asserting that it did not possess or control any records. The superior court granted the state's motion only in part, still requiring the state to disclose the victim's mental health records for an in-camera review but limiting the scope of the disclosure to the past eight years.

**¶6**          The state obtained a stay from the superior court, and now seeks special action relief from this court.

## JURISDICTION

**¶7**          We accept special action jurisdiction because there exists no adequate remedy by appeal for a challenge to an order to produce privileged information. Ariz. R.P. Spec. Act. 1(a); *Roman Cath. Diocese of Phx. v. Superior Court (State)*, 204 Ariz. 225, 227, ¶ 2 (App. 2003).

## DISCUSSION

**¶8**          As an initial matter, we hold that the superior court improperly directed the production order to the state rather than the victim. Under Ariz. R. Crim. P. 15.1(b), the state must produce material and information "within the State's possession or control." An order to produce material or information outside the state's possession or control must be directed not to the state, but to the person who has possession or control. *See* Ariz. R. Crim. P. 15.1(g). Defendant's motion sought production from the victim via service on the state. The state thereafter disclosed its relevant communications with the victim and confirmed that it neither possessed nor controlled any of the victim's mental health records. Accordingly, the superior court erred by directing its order to the state, not the victim. *See State v. Kellywood*, 246 Ariz. 45, 46, ¶ 3 n.1 (App. 2018).

**¶9**          We turn next to whether Defendant was entitled to review the victim's mental health records despite the constitutional and statutory protections against compelled disclosure of such information. We review the superior court's ruling for abuse of discretion. *See R.S. v. Thompson*, 251 Ariz. 111, 121, ¶ 36 (2021). The court abuses its discretion when no evidence supports its holding or when it commits an error of law in reaching a discretionary decision. *E.g., Dowling v. Stapley*, 221 Ariz. 251, 266, ¶ 45 (App. 2009).

¶10        Victims are constitutionally entitled to refuse discovery requests by the defense, Ariz. Const. art. 2, § 2.1(A)(5), and their medical and psychological treatment records are protected by statutory privileges, A.R.S. §§ 13-4062(4), 32-2085.  To resolve the question whether Defendant was nonetheless entitled to have the court review the victim's records, we must apply the test set forth by our supreme court in *R.S.*  *R.S.* held that

> when a criminal defendant's due process right to present a complete defense conflicts with a victim's state constitutional or statutory rights governing privileged mental health records, the victim may be compelled to produce such documents for in-camera review if the defendant shows a reasonable possibility that the information sought includes evidence that would be material to the defense or necessary to cross-examine a witness.

251 Ariz. at 115, ¶ 1.  Put differently, a defendant's due process rights will override the victim's rights in the case of a direct conflict.  *Id.* at 118, ¶¶ 20–21.  But *R.S.* also made clear that the test it established "does not create a general constitutional right to discovery."  *Id.* at 117, ¶ 16.  *R.S.* explained that for the defendant to prevail on a request for an in-camera review, the "request must be based on more than mere speculation and must include a sufficiently specific basis to deter fishing expeditions, prevent a wholesale production of the victim's medical records, and adequately protect the parties' competing interests."  *Id.* at 120, ¶ 30.

¶11        In *R.S.*, the defendant, who asserted a justification defense to the charge that he murdered his girlfriend during a domestic dispute, had personal knowledge that the victim had been hospitalized for mental health concerns after an earlier domestic dispute with him.  *Id.* at 115, ¶¶ 2–3.  The supreme court concluded that the superior court acted within its discretion by finding a reasonable possibility that the hospitalization and related records could show the victim's character for violence and corroborate the defendant's version of events.  *Id.* at 121, ¶¶ 34, 36.  The supreme court noted that the defendant did not make a "sweeping or generalized discovery request[ ]," but instead "identified the relevant documents, the entity that possesses them, the specific date of the documents, and the information likely to exist in them.  These are sufficient, document-specific facts that establish a reasonable possibility the requested information is material to [the defendant]'s justification defense—the core of his complete defense—and could cast doubt on his guilt."  *Id.* at ¶ 36.

¶12　　　　*R.S.* recognized that its result was not the rule, explaining that "victims routinely succeed in maintaining confidentiality of records" when defendants seek access to privileged records "indiscriminately or based merely on speculation that they might include exculpatory or useful information." *Id.* at 120, ¶¶ 27–28. To illustrate that point, the court cited three court of appeals decisions in which the victim's rights did not yield: *State v. Sarullo*, 219 Ariz. 431 (App. 2008), *State v. Kellywood*, 246 Ariz. 45 (App. 2018), and *State v. Dunbar*, 249 Ariz. 37 (App. 2020). 251 Ariz. at 120, ¶¶ 27–28.

¶13　　　　In *Sarullo*, the defendant moved for access to the victim's records to support his defense that the victim misconstrued his suicide threats as an assault against her. 219 Ariz. at 437, ¶ 19. We upheld the superior court's denial of the defendant's motion, explaining that he failed to "present[ ] a sufficiently specific basis" for his request and "provided the court no reason to believe [the victim]'s medical records would contain exculpatory evidence": there was "nothing in the record to support his assertion that the medical records would show [the victim] had not initially viewed the incident as an assault and 'could have shown there was a reasonable doubt about whether the gun was actually pointed at [her].'" *Id.* at ¶ 21 (last alteration in original).

¶14　　　　In *Kellywood*, the defendant, who was charged with sex crimes against his adopted daughter and defended on the ground that she was lying, moved for access to the victim's records on the theory that medical and counseling providers "[o]ftentimes . . . directly ask questions concerning whether or not someone has been sexually inappropriate with them." 246 Ariz. at 46, ¶¶ 2–3. Holding that "the burden of demonstrating a 'reasonable possibility' is not insubstantial, and necessarily requires more than conclusory assertions or speculation on the party of the requesting party," we concluded that the defendant failed to meet that burden. *Id.* at 48, ¶¶ 9–10. We explained that the defendant's basis for requesting the victim's records was purely speculative: he failed to identify any treatment provider or any specific condition for which the victim received care, and he further failed to provide any evidence to support his assertion that providers often ask patients whether they have been sexually victimized. *Id.* at ¶ 10. We emphasized that "were we to conclude that [the defendant] had demonstrated a 'reasonable probability' on the basis of such speculation, the effect would be to compel production of medical and counseling records in virtually any case in which a defendant accused of sexual offenses claims fabrication; the exception would swallow § 2.1(A)(5) of the Victims' Bill of Rights." *Id.*

¶15        In *Dunbar*, the defendant moved for access to the victim's records for impeachment and to support his misidentification defense (later changed to self-defense). 249 Ariz. at 47, 49, ¶¶ 23, 28. He asserted that he personally knew the victim had a family history of schizophrenia, had been diagnosed with severe depression and bipolar disorder, and had a history of not taking her medication and suffering delusions. *Id.* at 47, ¶ 24. He also identified three states in which the victim had received treatment. *Id.* We rejected his request as insufficiently specific. *Id.* at 48, ¶ 28. We held that the defendant offered "nothing more than a conclusory assertion that [the victim]'s medical records could contain exculpatory information because [the defendant] did not explain how the broad assertion that [the victim] was 'delusional' would support his misidentification defense" or his self-defense defense. *Id.* at 48–49, ¶ 28. We further held that the defendant's request was overly broad: he asked for fifteen years' worth of records from three states without identifying any specific agency or provider that treated the victim and without limiting his request to information necessary for his defense or impeachment. *Id.* at 49, ¶ 29.

¶16        Here, Defendant's request is akin to the requests in *Sarullo*, *Kellywood*, and *Dunbar*. Unlike in *R.S.*, Defendant does not identify any mental health records related to any other occasion in which the victim behaved as Defendant asserts he did leading up to the shooting. Nor does Defendant describe with any specificity his claimed knowledge of the victim's mental health status or treatment records. He seeks disclosure of records based only on vague claims that he knows the victim suffers from mental illness, his unsupported assumption that the victim has schizophrenia, a cold expert's opinion regarding schizophrenia and its risk factors, his allegations that the victim was acting erratically, and the victim's statement denying craziness. Were we to permit in-camera disclosure based on such a generalized and speculative request, we would effectively vitiate the privilege in every case where the defendant claims self-defense. *R.S.* requires much more. On this record, the superior court abused its discretion by ordering that the records be produced for its review.

## CONCLUSION

**¶17** We accept jurisdiction and grant relief for the reasons set forth above.



AMY M. WOOD • Clerk of the Court
FILED:    AA