IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**LANE DRAPER,**
*Petitioner,*

*v.*

**THE HONORABLE JO LYNN GENTRY, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge,*

**STATE OF ARIZONA, ET AL.**
*Real Parties in Interest.*

No. CR-22-0175-PR
Filed July 31, 2023

Appeal from the Superior Court in Maricopa County
No. CR2020-127377-001
The Honorable Jo Lynn Gentry, Judge
**VACATED AND REMANDED**

Order of the Court of Appeals, Division One
1 CA SA-22-0096
Filed June 14, 2022
**VACATED**

COUNSEL:

Colleen Clase, Jessica Gattuso (argued), Arizona Voice for Crime Victims, Phoenix, Attorneys for Lane Draper

Daniel Fenzel (argued), Grace M. Guisewite, Jessica Valdivia-Luna, Deputy Legal Advocates, Office of the Legal Advocate, Phoenix, Attorneys for Jordon Lee Nez

Randall S. Udelman, Arizona Crime Victim Rights Law Group, Scottsdale, Attorney for Amici Curiae National Crime Victim Law Institute and Arizona Crime Victim Rights Group

Rachell Mitchell, Maricopa County Attorney, Daniel Strange, Deputy County Attorney, Phoenix, Attorneys for Amicus Curiae Maricopa County Attorney's Office

Jana L. Sutton, Bernardo M. Velasco (argued), Mesch Clark Rothschild, Tucson, Attorneys for Amicus Curiae Attorneys for Criminal Justice

————————————

The Court issued a per curiam decision joined by CHIEF JUSTICE BRUTINEL, and JUSTICES LOPEZ, BEENE, MONTGOMERY and KING. JUSTICE BOLICK, joined by VICE CHIEF JUSTICE TIMMER, authored a dissenting opinion.

————————————

PER CURIAM:

¶1 In this case, we establish the standard a defendant must satisfy to compel extraction of GPS data by the defendant's third-party agent from a crime victim's automobile for in camera inspection by the trial court. In doing so, we seek to preserve the defendant's constitutional right to present a complete defense in light of the crime victim's rights under the

2

Victims' Bill of Rights, Fourth Amendment, and the privacy protection of article 2, section 8 of the Arizona Constitution.

**BACKGROUND**

¶2		Grant Draper ("Grant") was murdered in the early morning of July 16, 2020.  Prior to his death, Grant was drinking with his brother Lane Draper ("Draper"), Defendant Jordon Nez, and a fourth man, Roessel Jackson.  The men had plans to drink and stay the night at Nez's apartment before heading to work together the next morning.  As the night progressed, Grant apparently became emotional and had negative interactions with both Draper and Nez.  The rest of the night's events are not entirely clear because they derive from contradictory accounts of the three surviving men, all of whom were inebriated.  But at some point during the night, Grant was murdered with a knife that was never recovered.

¶3		Nez claims he blacked out from alcohol consumption and does not remember anything from the night until waking up the following morning.  When he left his room, he says he found Grant's body surrounded by large amounts of blood, panicked, and began cleaning it up. When police later asked if something could have happened the night before, he told them he might have done "something" to Grant.

¶4		Draper claims to have left the apartment around 2:00 a.m. and to have awakened in his truck the next morning at an unknown location. He also claims that upon waking, he typed Nez's address into his truck's GPS and headed back toward the apartment.  When Draper arrived, he claims Nez came outside and told him not to call the police.  He then followed Nez into the apartment, where he saw a body he believed to be Jackson's.  He claims he did not realize the body was Grant's until the police told him they had found Jackson at work.

¶5		Jackson says he left the apartment between 3:00 and 4:00 a.m. to try and find Draper; however, after no success, he came back to the apartment approximately thirty or forty-five minutes later.  Jackson claims that when he returned, Nez met him outside, told him that Grant was dead, and threatened his life if he told anyone.  After this supposed interaction,

Jackson left. He was recorded on a surveillance video at a gas station at 4:31 a.m. and reported to work at 6:15 a.m.

¶6            A few other facts are relevant. First, at 6:13 a.m. another tenant in Nez's apartment complex called 911 to report a truck blocking his parking space. The driver and the truck's description matched that of Draper and his truck. The caller said the driver was passed out and only woke up after the caller pounded on the truck's hood for several minutes, after which the driver sped away. Second, Nez's neighbors reported hearing a loud noise, like that of a door slamming, from Nez's apartment around 6:00 a.m. Finally, in addition to obtaining a warrant for Nez's apartment, the police obtained a warrant for Draper's truck and any GPS devices in it. They did not seize any GPS data from the vehicle but did recover a knife.

¶7            On July 22, 2020, Nez was charged with the second degree murder of Grant Draper. Because Grant was murdered, his brother Lane Draper is a victim by virtue of A.R.S. § 13-4401(19), a statute that implements article 2, section 2.1 of the Arizona Constitution, known as the Victims' Bill of Rights ("VBR").

¶8            To help in plea negotiations, and without notice to Draper, Nez obtained a court order to access GPS data for the location of Draper's truck between 11:59 p.m. on July 15, 2020 until 9:30 a.m. on July 16, 2020 from third parties, Onstar Corporation and Berla. This effort was unsuccessful, however, because the sought-after data was only physically present in the truck and was not otherwise accessible by Onstar and Berla. Nez then moved the court to order Draper to preserve and produce the GPS data. Additionally, Nez asked the court to order the Phoenix Police Department ("PPD") to extract the data from the vehicle. The State and Draper opposed the motion. Draper argued that turning his truck over to the police violated his constitutional right to refuse discovery under the VBR and his federal and state constitutional rights against unreasonable search and seizure. The State similarly contended that ordering Draper to surrender his vehicle for the GPS data extraction would be an unreasonable search and seizure under the Fourth Amendment because there was no probable cause and the PPD lacked the capacity to download the data. The court denied Nez's motion because it would deprive Draper of his truck for

an extended period, and other options might be available for Nez to extract the data.

**¶9** Nez then filed notice of a third-party defense where he listed Draper and Jackson as potentially culpable third parties. Nez filed a new motion to compel evidence, advising the court that he had found a company that could extract the data from Draper's truck. The data extraction would be limited to two hours, take place wherever Draper's truck was located, and generate a report with the requested data. Draper again opposed the motion on the basis that it violated his state and federal constitutional rights.

**¶10** Using the same standard this Court applied in *R.S. v. Thompson (Vanders II)*, 251 Ariz. 111 (2021), the trial court rejected the request for direct disclosure of the GPS data but allowed the data to be extracted for in camera review. Under this standard, the court concluded that Nez had shown constitutional entitlement to the data in order to present a complete defense by showing a reasonable possibility that the information would be material to his defense or necessary to cross-examine a witness. However, the court limited Nez's request to include only data between 2:15 a.m. to 8:40 a.m. on the day of the murder. The court further found that in camera review would appropriately balance Draper's rights as a statutory victim with Nez's rights as a criminal defendant.

**¶11** Draper filed a motion to clarify in which he informed the court that the truck was not running and was parked at his residence, and requested that his address be subject to a protective order and that only a representative from the extraction company be present, not Nez or his counsel. In response, the court clarified that Nez's counsel could be present. As the truck is inoperable, it would either need to be moved to a location with a power source or be hooked up to a power source at Draper's residence for the extraction equipment to function. At oral argument the court further clarified that after the extraction company pulled the data it would be put into a sealed, "potentially signed" envelope to ensure it was not opened and then given directly to the court. The court would then redact the data to the designated timeframe, and if the court found anything relevant, disclose it to Nez, Draper, and the State.

**¶12** Draper subsequently filed a petition for special action with the court of appeals. The court accepted jurisdiction but denied relief. Draper then timely petitioned this Court for review.

**¶13** We granted review to determine whether the standard established in *Vanders II* is the proper standard for a discovery request compelling a crime victim to produce his personal vehicle to permit the defendant's third-party agent to search and seize his GPS data, which presents an issue of statewide importance. Nez argues that the *Vanders II* requirement that a "reasonable possibility" exists that the disclosure will lead to material evidence should apply here. *Vanders II*, 251 Ariz. at 119 ¶ 23. Draper argues that Nez must show either probable cause under the Fourth Amendment, or that there is a "substantial probability" that the disclosure will produce evidence material to the defense. *See, e.g., id.* ¶ 26. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

## I.

**¶14** "Whether a defendant's due process right to present a complete defense" overcomes a victim's right to avoid submitting to discovery requests "is a matter of constitutional and statutory interpretation that we review de novo." *Vanders II*, 251 Ariz. at 116 ¶ 10.

**¶15** This case presents a confluence of clashing constitutional rights and principles that we seek to reconcile and harmonize. Our recent decision in *Vanders II* provides our analytical starting point because it addressed similar issues. There we held that a defendant may secure a victim's privileged personal information from a third party for in camera inspection by the trial court only where the defendant establishes a "reasonable possibility" that the information includes evidence to which the defendant is entitled as a matter of due process. *Id.* at 120 ¶ 30. Here we are asked whether the requisite showing for evidentiary disclosure from a crime victim that we articulated in that case extends to these facts.

**¶16**        As the accused, Nez has a due process right to "a meaningful opportunity to present a complete defense." *Id.* at 117 ¶ 13.  Although that does not entail a "general constitutional right to discovery," we held in *Vanders II* that "the due process right to present a complete defense is vitiated if a defendant is prevented access at the pretrial discovery stage to the 'raw materials' necessary to build his defense, rendering his trial fundamentally unfair." *Id.* ¶ 16.

**¶17**        Here, Nez seeks the GPS data to support his third-party defense identifying Draper as the possible killer and for cross-examination regarding the time Draper contends he was asleep.

**¶18**        Ordinarily, Arizona Rule of Criminal Procedure 15.1(g) would provide the means by which Nez could obtain this data from third parties.  Under Rule 15.1(g), "a court may order any person" to make material or information available to a defendant if "(A) the defendant has a substantial need for the material or information to prepare the defendant's case; and (B) the defendant cannot obtain the substantial equivalent by other means without undue hardship."  But Draper invokes multiple constitutional rights to prevent or limit extraction of GPS data from his truck through Nez's agent for in camera inspection by the trial court.  First, Draper asserts disclosure violates the Fourth Amendment, which provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  Draper argues that the Fourth Amendment's "probable cause" requirement for obtaining a search warrant, *see, e.g.*, *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018), applies here.

**¶19**        The Fourth Amendment pertains only to government action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (explaining that the Fourteenth Amendment, and constitutional rights incorporated to the states through it, only regulates state action).  Despite the fact that the extraction would be made by a private vendor, that requisite is satisfied here.  A court order constitutes state action. *See, e.g.*, *Shelly v. Kraemer*, 334 U.S. 1, 19 (1948); *see also Lugar*, 457 U.S. at 941–42 (holding that a private

party that seizes property pursuant to a state attachment system is a state actor).

¶20      The data Nez seeks also falls within the Fourth Amendment's protection. The United States Supreme Court has recognized that "individuals have a reasonable expectation of privacy in the whole of their physical movements," including GPS data. *Carpenter*, 138 S. Ct. at 2217; *accord State v. Jean*, 243 Ariz. 331, 340 ¶ 34 (2018) (holding that even short-term GPS monitoring is subject to the Fourth Amendment warrant requirement).

¶21      It does not follow, however, that the probable cause requirement applies, because here we are not dealing with a warrant, but rather a motion for a pretrial disclosure order. Unlike an ex parte warrant, which requires a probable cause showing, *see* U.S. Const. amend. IV, a motion for disclosure puts all parties on notice and allows the party from whom disclosure is sought to argue why the order should not be granted. As such, even though the disclosure here falls within the Fourth Amendment's protection, it implicates only the guarantee against "unreasonable" searches and seizures. *State v. Boudette*, 164 Ariz. 180, 184 (App. 1990) (holding that "[t]he constitutionality of a governmental seizure . . . must be judged by balancing the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the legitimate governmental interests alleged to justify the intrusion"); *In re Subpoena Duces Tecum*, 228 F.3d 341, 347–48 (4th Cir. 2000) (holding same in the context of subpoenas). The probable cause requirement therefore does not apply to pretrial discovery if there is notice and an opportunity to be heard. *See, e.g.*, *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 202–09 (1946); *State ex rel. A.B.*, 99 A.3d 782, 795 (N.J. 2014).

¶22      Draper also invokes protection against disclosure under our state constitution's privacy clause, Ariz. Const., art. 2, § 8, which provides, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Whatever protection the privacy clause may provide Draper, its scope is limited by the final provision: "without authority of law." The parties did not brief the meaning of that provision and we do not decide its requirements today. However, we are comfortable

stating that a court order that follows notice and an opportunity to be heard constitutes authority of law under the provision's plain meaning.

**¶23** Draper's arguments present more difficult questions under the VBR, Ariz. Const. art. 2, § 2.1, and its implementing statutes. Although Nez has identified Draper as a possible third-party suspect, Draper retains his rights as a statutory victim under § 13-4401(19) because his brother was the murder victim. Specifically, Draper invokes his rights as a victim "[t]o be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process," Ariz. Const. art. 2, § 2.1(A)(1), and "[t]o refuse an interview, deposition, or other discovery request by the defendant," Ariz. Const. art. 2, § 2.1(A)(5). Hence, in an ordinary case, Draper would be completely insulated from the defendant's discovery request.

**¶24** But this is not an ordinary case. Here, Draper's VBR rights are in conflict with Nez's constitutional right to present a complete defense. The VBR and its implementing statutes provide "powerful counterbalances to defendants' rights," *Vanders II*, 251 Ariz. at 118 ¶ 20, in recognition that the interests of crime victims may not otherwise be vindicated in the criminal justice system. However, owing to the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, "when a defendant's due process right to present a complete defense (and ultimately, to a fair trial) and a victim's state constitutional or statutory rights directly conflict, the due process right prevails." *Vanders II*, 251 Ariz. at 118 ¶ 20. We are, however, cognizant of our state constitutional mandate to construe rules of criminal procedure to preserve and protect victims' rights, Ariz. Const. art. 2, § 2.1(A)(11), and we enforce the VBR to the maximum possible extent without trespassing upon a defendant's federal constitutional rights, *Vanders II*, 251 Ariz. at 118 ¶ 21 (noting that "the rights of the defendant and victims are not necessarily mutually exclusive").

**¶25** *Vanders II* greatly informs but does not fully resolve the issue here. In that case, we specified what standard applies where a defendant requests a victim's confidential medical records from a third party for in camera inspection and the victim invokes both the VBR protections and the physician-patient privilege. 251 Ariz. at 115 ¶ 1. The Court observed that when the defendant seeks discovery from a victim, Rule 15.1(g)'s

requirements are necessarily modified to require the defendant to show that the "substantial need" for the evidence is "one of constitutional dimension." *Id.* at 116 ¶ 12 (quoting *State v. Connor*, 215 Ariz. 553, 561 ¶ 22 (App. 2007)). We derived the applicable standard for establishing a need of constitutional dimension from *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232 (App. 1992). In *Roper*, the court of appeals held that "if a trial court excludes essential evidence, thereby precluding a defendant from presenting a theory of defense, the trial court's decision results in a denial of the defendant's right to due process that is not harmless." 172 Ariz. at 236.

¶26        In *Vanders II*, the Court held that to be entitled to discovery of otherwise-confidential medical records for in camera inspection by the trial court, the defendant must establish that the evidence sought in the records is necessary to ensure "a fundamentally fair trial, including a meaningful opportunity to present a complete defense." 251 Ariz. at 116–17 ¶¶ 12–13. Once the defendant has established that the evidence is of a constitutional dimension, he must then demonstrate a "reasonable possibility that the information [requested] includes evidence that would be material to the defense or necessary to cross-examine a witness." *Id.* at 115 ¶ 1. We reasoned that "[a]lthough an in-camera review undoubtedly is an intrusion into confidential records, . . . it is inherently less intrusive than disclosure to defendants." *Id.* at 119 ¶ 24. That is because the trial court plays a "gatekeeper function," *id.* ¶ 27, so that the victim's records would be released to a defendant only if the court determines "they contain [evidence] essential to [the defendant's] right to present a complete defense." *Id.* ¶ 24. The reasonable possibility standard "protects a victim's privacy interests but does so without infringing a defendant's right to obtain evidence necessary to present a complete defense." *Id.* ¶ 26.

¶27        In light of these protections, the Court rejected a more demanding "substantial probability" showing. *Id.* The Court reasoned that this standard was too high *in the in camera review context* because making a defendant prove that there is a substantial probability that the requested information will contain evidence essential to presenting a complete defense "effectively requires [the defendant] to know the contents of the requested documents as a prerequisite for in-camera review." *Id.* We noted that a substantial probability showing "seems better suited to a [direct]

disclosure rule rather than as a benchmark for in-camera review," given the far greater intrusion into a victim's privacy that direct disclosure to the defendant would necessarily entail. *Id.*

**¶28** This case differs from *Vanders II* because a third party retained by the defense would extract the data from Draper's truck. In *Vanders II*, the records went directly to the trial court from an independent third party without passing through a third party affiliated with the defense, and the information was only to be provided to the defendant after an independent determination by the court. Therefore, the victim's privacy would be protected. That justified the less-burdensome "reasonable possibility" standard we required from the defendant in that unique context.

**¶29** Thus, the determinative question here is whether the same protection exists for Draper, or whether, despite the presence of in camera review, the data extraction *is* essentially a direct disclosure because the defendant's agent will be able to view the data or obtain and, at least momentarily, possess it. The record is largely silent on exactly what the extraction process entails. The trial court's verbal instruction is that the extracted data would be placed in an envelope—"maybe" signed by the agent—and delivered directly to the court. We do not know whether Nez's agent will be able to view the data as it is extracted or even what form it will take. If a possibility exists that the data will be made available for viewing by Nez or his agent, that is tantamount to direct disclosure, hence the assurances of victim privacy that justified the reasonable possibility standard in *Vanders II* would not exist here.

**¶30** *Vanders II* articulated the nature of the showing outside of a direct disclosure context: "[a] defendant must demonstrate a constitutional entitlement to [the requested] information in order to present a complete defense by first showing a reasonable possibility that the information sought includes evidence that would be material to the defense or necessary to cross-examine a witness." *Id.* at 120 ¶ 30. In other words, in that context, a defendant is entitled to discovery of a victim's privileged information only upon showing that (1) the defendant seeks evidence whose materiality is of constitutional dimension, as distinguished by evidence merely relevant to the defense; *and* (2) there is a reasonable possibility that the requested information actually includes such evidence. *Id.* As we

explained, "[t]he defendant's request must be based on more than mere speculation and must include a sufficiently specific basis to deter fishing expeditions, prevent a wholesale production of the victim's medical records, and adequately protect the parties' competing interests." *Id.*

¶31 Here, Nez satisfies that showing because his third-party defense is more than a mere fishing expedition designed to evade VBR protections. *Cf. State v. Mandell*, 253 Ariz. 97, 101 ¶ 16 (App. 2022) (rejecting disclosure of victim's personal information based on "vague claims"). First, Nez seeks evidence of constitutional dimension because the evidence, if found, would reliably reveal Draper's precise location and movements shortly after the murder. This evidence is necessary for Nez to establish a complete defense—his proffered third-party defense is clearly colorable because Draper (like the others present the evening of the murder) was inebriated, he argued with his brother, he cannot fully account for his whereabouts when the murder occurred because he passed out, and a knife was found in his truck. *And*, second, given that the requested GPS data would show the movements of Draper's truck during the relevant time, Nez certainly has shown that a "reasonable possibility" exists that the relevant GPS information contains evidence of constitutional dimension. *See Vanders II*, 251 Ariz. at 115 ¶ 1, 120 ¶ 30.

¶32 But under the circumstances here—where discovery may entail disclosure directly from the victim to the defendant and thus evade the privacy protections afforded by in camera review—Nez may need to show more than a reasonable possibility that evidence necessary for his defense exists within the universe of requested information to establish his entitlement to discovery directly from Draper. *Id.* at 120 ¶ 30. As we instructed in *Vanders II*, even when a defendant establishes that the request for information is to obtain evidence of constitutional dimension, the disclosure still must "prevent a wholesale production of the victim's . . . records, and adequately protect the parties' competing interests." *Id.*

¶33 We are unable to determine from the record to what extent disclosure would burden Draper, both in terms of the scope of the search and the risk of initially disclosing private information directly to Nez or his agent. On remand, if the trial court can establish time, place, and manner

safeguards that minimize the disruption to Draper, limit the data's timeframe, and establish extraction protocols to ensure that only the court will see the data, then Nez need only satisfy the "reasonable possibility" standard, which we have no difficulty finding satisfied here.

¶34 If, by contrast, Nez's agent will be able to view any portion of the data or share it with Nez, then it becomes a direct disclosure and is subject to the more demanding substantial probability standard. *See Vanders II*, 251 Ariz. at 119 ¶ 26 (observing that the "substantial probability" standard "seems better suited to a disclosure rule rather than as a benchmark for in-camera review"); *see also In re B.H.*, 946 N.W.2d 860, 870–71 (Minn. 2020) ("Requiring the alleged victim to disclose her cell phone data directly to a defense-hired expert would undercut her right to privacy and fail to properly balance this right with the defendant's right to present a defense . . . ."); *cf. Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (stating due process requires allowing defendant to call a witness as a possible third-party offender where there were "persuasive assurances of trustworthiness").

¶35 The substantial probability standard is appropriate for direct disclosure of a victim's information because it is commensurate with the degree of intrusion into a victim's privacy when balancing those interests with the defendant's need for discovery of evidence of constitutional significance. *See Vanders II*, 251 Ariz. at 118 ¶ 21 ("[A] court must strike a balance between the competing interests of a victim's privilege and a defendant's federal constitutional rights to procure and present evidence necessary to construct a complete defense."). The "substantial probability" standard is a familiar metric for weighing constitutional interests and, in fact, is a fixture of Arizona mental health statutes, *see, e.g.*, A.R.S. § 36-501(33)(b), which our courts have construed as meaning a "real probability," *In re Maricopa Cnty. Cause No. MH-90-648*, 173 Ariz. 177, 183 (App. 1992) ("We construe [substantial probability] to mean that there must be the real probability that the individual will suffer some danger of harm from his mental disorder if the condition is not treated."). Other courts have defined "substantial probability" and similar terms in various legal contexts to mean "very likely" or "a strong likelihood." *See, e.g.*, *Jabro v. Superior Court*, 95 Cal. App. 4th 754, 758 (2002) (holding that, in the context of punitive damages claims, "substantial probability" means "'very likely'

or 'a strong likelihood' just as [its] plain meaning suggests"); *In re Commitment of Curiel*, 597 N.W.2d 697, 704 (Wis. 1999) (stating that, "given the common and appropriate usage of the term, we interpret 'substantially probable' as meaning 'much more likely than not'" in the context of a statute governing commitment of sexually violent persons); *In re Det. of Bailey*, 740 N.E.2d 1146, 1156–57 (Ill. App. Ct. 2000) (same). We are persuaded that "very likely" is the proper meaning of "substantial probability."

¶**36**     Thus, applying the "substantial probability" standard in the direct disclosure context, a defendant is entitled to discovery from a victim if the defendant seeks evidence of constitutional dimension (which is necessary to vindicate the defendant's constitutional rights) and the defendant establishes that the requested discovery is *very likely* to contain such evidence.

¶**37**     Although we observed in *Vanders II* that the substantial probability standard is usually very difficult to satisfy, 251 Ariz. at 119 ¶ 26, the trial court may determine here that a substantial probability exists that the requested GPS data contains precisely the location evidence necessary to establish a third-party defense. If so, Nez would establish a need of constitutional dimension for the sought evidence and a substantial probability that the requested discovery will procure such evidence, to which Draper's VBR interests must yield.

¶**38**     To be clear, the trial court, in all circumstances, must take whatever precautions it can to protect the privacy rights at stake. It will always be the preferred course of action that an entity other than the defendant's agent extract the data and provide it to the court for in camera review. However, where that is impossible, should the trial court determine that a defendant satisfies the substantial probability showing, it should still apply all possible precautions to safeguard the victim's rights.

## II.

¶**39**     The dissent contends that we have "graft[ed] onto [the] constitutional entitlement [showing] an additional requirement" in the direct disclosure context by requiring that a defendant establish "that the

requested information is *very likely* to contain such evidence." *Infra* ¶ 46. The dissent misreads *Vanders II* and essentially rejects its central framework. In *Vanders II*, we adopted a discovery standard requiring a defendant to demonstrate a need for evidence of constitutional dimension *and* that the requested discovery was reasonably likely to contain such evidence. 251 Ariz. at 120 ¶ 30. We expressly premised the reasonable possibility standard on the less onerous privacy invasion embodied in a trial court's in camera review of a victim's medical records obtained from a third party. *Id.* at 119 ¶ 24.

¶40 Rather than merely rejecting the majority's substantial probability standard in the direct disclosure context, the dissent appears to repudiate the very concept of a conditional discovery standard centered, in part, on balancing a defendant's due process right to discovery with a victim's right to privacy based on the likelihood that evidence of constitutional dimension exists within the universe of a victim's requested information. *Infra* ¶ 47. Instead, the dissent relies on *State ex rel. A.B.*, 99 A.3d 782 (N.J. 2014), for a fixed and ubiquitous "reasonable basis" standard (akin to the "reasonable possibility" standard) for discovery of a victim's privileged or private information. *Infra* ¶ 51. But *A.B.* itself acknowledged that "[t]he evidentiary burden necessarily increases in direct proportion to the nature and extent of the intrusion." 99 A.3d at 790. Moreover, the dissent's suggestion that the "substantial probability" standard is "nearly impossible to meet," *infra* ¶ 51, or is inconsistent with the principle that victims' rights must yield if they conflict with a defendant's due process rights, *infra* ¶ 47, is readily refuted by the majority's recognition that Nez likely meets the "substantial probability" standard in this case, Part I. ¶ 37. Here, rather than "[e]levating dicta from *Vanders II*," *infra* ¶ 46, we embrace and faithfully apply its framework, which the dissent seemingly abandons.

## CONCLUSION

¶41 For the foregoing reasons, the trial court order is vacated and the matter is remanded to that court for further proceedings consistent with this Opinion.

DRAPER v. HON. GENTRY/STATE/NEZ
JUSTICE BOLICK, joined by VICE CHIEF JUSTICE TIMMER, Concurring
in Part, Dissenting in Part and Dissenting in the Result

BOLICK, J., joined by TIMMER, VCJ, concurring in part, dissenting in part, and dissenting in the result.

**¶42** We concur with the majority on all of the issues except the Victims' Bill of Rights ("VBR"), and even agree with much of the analysis of that issue. However, because in our view the principles on which the majority and we agree dictate a different outcome, we dissent from the majority's resolution.

**¶43** With the adoption of the VBR in 1990, Arizona marked an important new epoch in ensuring for the first time a meaningful role for victims in the criminal justice process. The VBR extended to crime victims valuable rights of notice, participation, restitution, privacy, finality, and others.

**¶44** Typically, those rights can coexist comfortably with the rights accorded to the accused under both the United States and Arizona Constitutions. However, by virtue of the Supremacy Clause, U.S. Const. Art. VI, cl. 2, "federal constitutional rights trump state constitutional and statutory rights." *R.S. v. Thompson* (*Vanders II*), 251 Ariz. 111, 118 ¶ 20 (2021). Therefore, "when a defendant's due process right to present a complete defense (and ultimately, to a fair trial) and a victim's state constitutional or statutory rights directly conflict, the due process right prevails." *Id.* Thus, as the majority aptly and elegantly states, "we enforce the VBR to the maximum possible extent without trespassing upon a defendant's federal constitutional rights." *Supra* ¶ 24.

**¶45** Where a criminal defendant seeks discovery from a victim that would otherwise be protected by the VBR, as we stated in *Vanders II*, "a victim's right to refuse discovery must yield when a defendant makes the requisite constitutional showing of need for the information." 251 Ariz. at 118 ¶ 21. In the context of in camera disclosure, the Court held that "[a] defendant must demonstrate a constitutional entitlement . . . by first showing a reasonable possibility that the information sought includes evidence that would be material to the defense or necessary to cross-examine a witness." *Id.* at 120 ¶ 30. The majority here holds that Nez satisfies that standard, given that he seeks evidence of "constitutional

DRAPER v. HON. GENTRY/STATE/NEZ
JUSTICE BOLICK, joined by VICE CHIEF JUSTICE TIMMER, Concurring
in Part, Dissenting in Part and Dissenting in the Result

dimension" because it is "necessary . . . to establish a complete defense," and has shown a reasonable possibility that the GPS data "contains evidence of constitutional dimension." *Supra* ¶ 31. That is precisely what the Court held in *Vanders II* to establish a "constitutional entitlement" to the information, 251 Ariz. at 120 ¶ 30, to which a victims' privacy rights "must yield." *Id.* at 118 ¶ 21; s*ee also State v. Matthews*, 245 Ariz. 281, 285 ¶ 12 (App. 2018) ("[B]efore a victim may be compelled to disclose information or sit for an interview, the defendant must show 'a *reasonable possibility*' that he is entitled to the information as a matter of due process." (emphasis added) (quoting *State v. Connor*, 215 Ariz. 553, 558 ¶ 10 (App. 2007))).

**¶46** That same inquiry should apply here. But instead, the majority grafts onto that constitutional entitlement an additional requirement. Elevating dicta from *Vanders II,* it holds that in the direct disclosure context, 251 Ariz. at 119 ¶ 26, a defendant seeking discovery from a victim must show that the evidence sought is "of constitutional dimension (which is necessary to vindicate the defendant's constitutional rights)" *and* establish "that the requested information is *very likely* to contain such evidence." *Supra* ¶ 36.

**¶47** That additional requirement is inconsistent with the majority's recognition that VBR rights must yield if they conflict with a defendant's constitutional right to present a complete defense. The showing necessary to establish that right does not increase based on the burden imposed on the victim; it either is met or it isn't. If it is met, the victim's rights must still be accommodated to the greatest possible extent consistent with the defendant's right to present a complete defense, but enforcement of the VBR cannot impose greater conditions on the defendant's right.

**¶48** But that is exactly what the "substantial possibility" requirement does. By the majority's own reasoning, a defendant who establishes a right of constitutional dimension, specifically seeking evidence "necessary to vindicate the defendant's constitutional rights," must additionally show the requested information is "very likely" to contain such evidence. The majority does so notwithstanding our observation in *Vanders II* that the substantial probability standard

DRAPER v. HON. GENTRY/STATE/NEZ
JUSTICE BOLICK, joined by VICE CHIEF JUSTICE TIMMER, Concurring
in Part, Dissenting in Part and Dissenting in the Result

"effectively requires a defendant to know the contents of the requested documents." 251 Ariz. at 119 ¶ 26. Thus, in the direct disclosure context, a defendant may in many instances be unable to obtain evidence that, as the majority acknowledges here, is of a constitutional dimension, necessary to provide a complete defense, and is reasonably likely to exist within the discovery sought.

¶49 Enforcing the VBR in this way impermissibly diminishes a defendant's ability to exercise a federal constitutional right. We cannot say it better than the Court did in *Vanders II*, which declared that courts "generally recognize the unremarkable principle we embrace here: 'the purpose of pretrial discovery is to ensure a fair trial[,] [and] [a] criminal trial where the defendant does not have access to the raw materials integral to the building of an effective defense is fundamentally unfair.'" 251 Ariz. at 120 ¶ 29 (alterations in original) (quoting *State ex rel. A.B.*, 99 A.3d 782, 790 (N.J. 2014)). Indeed, "if a trial court excludes essential evidence, thereby precluding a defendant from presenting a theory of defense, the trial court's decision results in a denial of the defendant's right to due process." *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 236 (App. 1992).

¶50 The majority accuses us of abandoning *Vanders II*, but we embrace and would apply here the same standard we applied in that opinion. Indeed, we observed in *Vanders II* that "'the burden of demonstrating a 'reasonable possibility' is not insubstantial.'" *Vanders II*, 251 Ariz. at 119 ¶ 23 (quoting *State v. Kellywood*, 246 Ariz. 45, 48 ¶ 9 (App. 2018)). Until this decision, the Court has consistently held that the application of the VBR cannot diminish a defendant's constitutional rights. Here, instead, the majority holds that the defendant's unquestioned right to obtain information necessary to present a complete defense and to cross-examine witnesses is only the starting point: that right cannot be vindicated if it involves a direct disclosure unless it is highly likely to include the identified information.

¶51 Where the VBR collides with a defendant's right of *constitutional* dimension, as the majority acknowledges here, the proper course is not to deny disclosure or impose requirements that are nearly impossible to meet, but to allow it in a way that is least burdensome to the

DRAPER v. HON. GENTRY/STATE/NEZ
JUSTICE BOLICK, joined by VICE CHIEF JUSTICE TIMMER, Concurring
in Part, Dissenting in Part and Dissenting in the Result

victim. *See, e.g.*, *Connor*, 215 Ariz. at 561 ¶ 22; *Roper*, 172 Ariz. at 240–41. In *A.B.*, which we cited approvingly in *Vanders II*, 251 Ariz. at 120 ¶ 29, the New Jersey Supreme Court, in the much more invasive context of inspecting a victim's home, stated the standard to which we should consistently adhere: "[W]hen the defense . . . has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted." 99 A.3d at 793. The trial court should take every possible step to facilitate in camera review rather than direct disclosure; and if that proves impossible, to minimize the intrusion to the victim and to limit the scope of the discovery.

**¶52** But requiring a substantial probability showing elevates a victim's privacy rights over a defendant's right to present a complete defense. That we cannot do. For the foregoing reasons, and with great respect to our colleagues, we dissent from this part of the majority's holding and would affirm the trial court's discovery order.