IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

LEILAH LOPEZ, *Petitioner*,

*v.*

STATE OF ARIZONA, *Respondent*.

No. 1 CA-SA 25-0220

FILED 11-18-2025

---

Petition for Special Action from the Superior Court in Maricopa County
No. CR2023-008427-001
The Honorable Kristin Culbertson, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART;
REMANDED WITH INSTRUCTIONS**

---

**COUNSEL**

Maricopa Public Defender's Office, Phoenix
By Alicia M. Dominguez (argued) & Nikolas Forner
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Julie A. Done (argued), Josh Maxwell & Richard Dusterhoft
*Counsel for Respondent*

Law Office of Eric W. Kessler, Scottsdale
By Eric W. Kessler
*Co-counsel for Amicus Curiae Co-Defendant Johnny Brazell*

Law Office of Candice L. Shoemaker, Phoenix
By Candice L. Shoemaker
*Co-counsel for Amicus Curiae Co-Defendant Johnny Brazell*

---

## OPINION

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Leilah Lopez seeks special action relief from the superior court's denial of her motion to release physical evidence. Because access to the physical evidence may lead to the discovery of information relevant to Lopez's defense against her pending criminal charges, we accept jurisdiction and grant relief in part, remanding with instructions.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In December 2022, Lopez and her romantic partner, co-defendant Johnny Brazell, moved to a townhome in Glendale with her son, Brian (a pseudonym), from a previous relationship. In May 2023, Brazell called 9-1-1 to report that while on a walk, a dog attacked Brian, and after napping, Brian was no longer breathing. Emergency Medical Services ("EMS") arrived soon after and found Brian without a pulse and not breathing. EMS transported Brian to the hospital, where the hospital staff pronounced him dead. Brazell and Lopez told the hospital staff that a dog had attacked Brian. But the staff believed that his injuries did not appear to be from a dog attack and notified the Glendale Police Department of the suspicious circumstances. The hospital staff told detectives Brian's internal temperature suggested he died one to two hours before arriving at the hospital. While the physician did not find any dog bites or attack wounds, detectives did see bruising across Brian's body and face, as well as cuts and swelling. Lopez contends that while being interrogated by the police, Brazell confessed to hitting Brian's head on a table earlier that morning when Lopez was not in the room.

¶3        The parties agree that several days later, the Medical Examiner ("ME") performed an autopsy on Brian and collected, tested, and preserved organs and tissue samples. The ME removed small tissue samples from some organs and preserved them in paraffin blocks, which the ME could later use to prepare tissue slides. The ME stated the cause of

2

death was multiple blunt force injuries, and the manner of death was homicide. The State alleges that during a search of the home, detectives found videos spanning the weeks before Brian's death, which show Brazell and Lopez repeatedly abusing the child.

¶4 A grand jury indicted Lopez for six counts of child abuse, one count of conspiracy to commit child abuse, one count of attempt to commit child abuse, one count of kidnapping, ten counts of aggravated assault causing serious physical injury, and one count of first-degree murder, charged as both felony murder and premeditated murder. The State later filed an intent to seek the death penalty.

¶5 Lopez hired an independent medical expert, Dr. Evan Matshes, to evaluate the ME's findings and conclusions. Lopez requested that the ME release the autopsy file and duplicate tissue slides prepared from the paraffin blocks to her expert. The superior court ordered the release of the report and tissue slides.

¶6 The ME's retention policy required destruction of the tissue and organ specimens after two years. In April 2024, Lopez sought preservation of the tissue and organs set for destruction.

¶7 Dr. Matshes informed defense counsel that by personally inspecting the tissue and organs, he may be able to estimate the time and cause of death more accurately. In April 2024, Lopez moved for the release of the organs and tissue for independent testing, under Arizona Rule of Criminal Procedure ("Rule") 15.1 and the Federal and State Due Process Clauses, to "better understand the etiology of [the] reported injuries and the possible mechanisms and timeframes of causation." The State objected, arguing that the discovery request violated the victim's rights and did not satisfy the criteria of Rule 15.1(g). The ME, however, did not object and requested that the court extend the destruction date to May 2026.

¶8 The court denied Lopez's motion, finding that under *State v. Fields*, 196 Ariz. 580, 582 (App. 1999), she did not meet the criteria of Rule 15.1(g) and that Lopez failed to show the tissue and organ specimens were necessary to present a complete defense. The court, however, granted the ME's request, extending the destruction date to May 2026.

¶9 Lopez moved for reconsideration, claiming she had a right under Rule 15.1(e) to examine and test tangible evidence. The court denied her reconsideration motion without ordering a response. Lopez then brought this special action.

**DISCUSSION**

¶10         We may accept special action jurisdiction when a party has no "equally plain, speedy, and adequate remedy by appeal or if the issue is of statewide significance, a matter of first impression, or a pure question of law." *State v. LaBianca*, 254 Ariz. 206, 208–09, ¶ 5 (App. 2022) (quotation omitted); *see also* Ariz. R.P. Spec. Act. 12(a), (b)(5) ("In deciding whether to accept jurisdiction, the court should consider . . . whether the petition asks the court to resolve questions . . . tending to evade review, including questions that may become moot before an appeal.").

¶11         Relief for Lopez's claim would be unavailable after the May 2026 destruction date passes. And from the record provided, the trial here will not be resolved by that time. For this reason, we accept special action jurisdiction.

¶12         We review the legal scope of disclosure under Rule 15 *de novo*, while we review the superior court's rulings for an abuse of discretion. *State v. Johnson*, 247 Ariz. 166, 193, ¶ 82 (2019).

**A.      A Criminal Defendant Has the Right to Present a Complete Defense.**

¶13         A defendant has a due process right to "a meaningful opportunity to present a complete defense." *R.S. v. Thompson*, 251 Ariz. 111, 117, ¶ 13 (2021). And while that right does not entail a "general constitutional right to discovery," "the due process right to present a complete defense is vitiated if a defendant is prevented access at the pretrial discovery stage to the 'raw materials' necessary to build his defense, rendering his trial fundamentally unfair." *Id.* at 117, ¶ 16; *Draper v. Gentry*, 255 Ariz. 417, 422, ¶ 16 (2023). This due process right does have some limits. For example, when the defense's requested investigation would require a defendant to secure a victim's privileged personal information from a third party, a court may order its release "only where the defendant establishes a 'reasonable possibility' that the information includes evidence to which the defendant is entitled as a matter of due process." *Draper*, 255 Ariz. at 422, ¶ 15.

¶14         To effectuate the due process right to present a complete defense, our supreme court has established detailed competency standards for attorneys appointed in capital cases. *See* Ariz. R. Crim. P. 6.8. Such attorneys must be permitted to investigate the State's case thoroughly. In fact, they are required to do so. *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003);

*see also* 2003 American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ["ABA Guidelines"] 10.7(A) (Counsel must "conduct thorough and independent investigations relating to the issues of both guilt and penalty."); Ariz. R. Crim. P. 6.8(a)(5) (Attorneys must be "familiar with and guided by the performance standards in the [ABA Guidelines])"). Rule 6.8 integrates and ensures that the ABA Guidelines are not merely advisory but set forth expectations for defense counsel in capital cases. *Cf. State v. Hausner*, 230 Ariz. 60, 86, ¶ 125 (2012) (The ABA Guidelines are "guidelines and not requirements."); *Fitzgerald v. Myers*, 243 Ariz. 84, 90, ¶ 15 (2017) (same).

## B. The State Has Limited Standing to Object to a Defendant's Discovery Request.

¶15 The State opposed Lopez's motion for release, arguing that Lopez did not have a substantial need under Rule 15.1(g). In opposing a defense discovery motion, the State has limited standing to object. As noted below, courts have recognized that the State has standing to object (1) on behalf of another state agency if requested, (2) on behalf of the victim if requested or required by statute, or (3) to assert reasonable conditions about the evidence.

¶16 The State first argued that a substantial need was required, citing *Fields*, 196 Ariz. at 582. But in *Fields*, the objection was to interference with the crime lab's functioning. Here, the ME did not object to Lopez's request. And *Fields* did not involve independent testing. The State, serving in its prosecutorial capacity, lacked standing to challenge the request directed to an independent State agency. *See Humana Hosp. Desert Valley v. Superior Ct.*, 154 Ariz. 396, 403 (App. 1987) ("Generally, a party may not challenge a discovery order directed to a nonparty witness, the right to object being reserved solely for the witness subpoenaed."). As noted, there is no question that the ME did not request the prosecution to object on its behalf, as the Office of the Medical Examiner appeared through separate counsel and did not object.

¶17 The right to oppose motions directed at a nonparty state agency is reserved for the agency. *Cf. Knapp v. Hardy*, 111 Ariz. 107, 112 (1974) ("[T]he county attorney has no standing to object as to who will or will not represent the defendant or be associated as counsel."); *Mota v. Buchanan*, 26 Ariz. App. 246, 249 (1976) ("[T]he prosecution has no right to interfere with or prevent a defendant's access to a witness."). Only if a party can show a "personal right or privilege" in the subject matter of the order directed at the non-party can the party contest it. *See Humana*, 154 Ariz. at

403 (quotation omitted); *see also State v. Moody*, 208 Ariz. 424, 456, ¶ 129 (2004) (The State may not unreasonably interfere with a defendant's request for a scientific test.); *MacDonald v. Hyder*, 12 Ariz. App. 411, 417 (1970) ("Unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief." (quoting *Shepherd v. Castle*, 20 F.R.D. 184 (W.D. Mo. 1957))). The State lacked standing to object on behalf of the ME.

**¶18**     The State also opposed the request by claiming the tissue and organ specimens were protected under the Victim's Bill of Rights ("VBR"). Ariz. Const. art. 2, § 2.1; A.R.S. § 13-4401 to -4443. Section 2.1(A)(1) of the VBR mandates that victims are "[t]o be treated with fairness, respect, and dignity," and the prosecution has a role in ensuring that those principles are respected. But the record does not suggest that allowing the defense expert access to perform the same types of testing that the medical examiner has conducted infringes on the victim's right to be treated fairly and with respect and dignity.

**¶19**     While the VBR confers some duties on the State to act on behalf of victims, "the rule is well established that a prosecutor does not 'represent' the victim in a criminal trial; therefore, the victim is not a 'client' of the prosecutor." *State ex rel. Romley v. Superior Ct.*, 181 Ariz. 378, 381-82 (App. 1995). For support of its VBR position, the State cited *State v. Connor*, which requires a balancing of the defendant's constitutional right to a fair trial with the victim's right to be free from pretrial discovery sought by the defendant. 215 Ariz. 553, 558, ¶ 9 (App. 2007). But in *Connor*, the victim's parents objected to the defendant's request, *id.* at 557, ¶ 5, and because the victim in that case had been killed, his parents were considered victims under the VBR with standing to assert his rights, *id.* at 557, ¶ 2; Ariz. Const. art. 2, § 2.1(C) ("'Victim' means a person against whom the criminal offense has been committed or, if the person is killed . . . the . . . parent, child or other lawful representative, except if the person is in custody for an offense or is the accused."). And here, the victim's body had been examined by the ME, and the preserved slides, tissue, and organs memorializing the victim's suffering were already evidence in a criminal proceeding, whether the defendant's expert sought to examine them. There is no further imposition on the victim during the defense's examination of them.

**¶20**     Other than its statutory duties, the State may only object under the VBR if the victim has standing to object under the VBR and requests that the State object on his or her behalf. A.R.S. § 13-4437(C). In this case, the record does not contain such a request.

**¶21** More importantly, the State identifies no privileged or confidential victim information covered by the VBR in this case. Nor could it. The State's expert—the ME—used the tissue or slides in reaching his conclusion. And there is no dispute that the ME removed the organs from the deceased victim, examined them, determined what tissue samples were necessary from those organs, and took samples. The defense expert was entitled to review the ME's work, just as a State's expert has a right to review a noticed defense expert's conclusion. *See State ex rel. Adel v. Hannah*, 250 Ariz. 426, 430, ¶ 11 (App. 2020) ("The State is entitled to 'a meaningful opportunity to rebut the defendant's expert testimony.'" (quoting *Phillips v. Araneta*, 208 Ariz. 280, 283, ¶ 9 (2004))). Nor is the review of an opposing party's expert's results limited to the tests performed by the opposing expert. *State v. Cota*, 229 Ariz. 136, 146, ¶ 37 (2012) ("The State's examination need not mirror that of the defense."). Experts from both sides of a criminal prosecution are subject to review by an opposing expert and are not limited by the tests performed by the initial expert.

**¶22** While the State lacked standing to object generally to the investigation conducted by an opposing expert, it had standing to request "reasonable conditions, including an appropriate stipulation concerning chain of custody to protect physical evidence or to allow time for the examination or testing of any items." Ariz. R. Crim. P. 15.1(e); *Moody*, 208 Ariz. at 457, ¶ 129. Because the court accepted the State's objection about *Fields* limiting discovery, it never considered the State's alternate position on the release of the physical evidence. The State may request reasonable conditions for the release of the evidence, but we find no support for its general objection. The superior court must determine the reasonableness of any requested conditions on remand.

**C. Lopez Did Not Waive Her Argument Under Rule 15.1(e) or Due Process.**

**¶23** The State argues that Lopez has waived any argument under Rule 15.1(e) because she failed to raise this argument until her motion for reconsideration. Generally, an appellate court need not consider arguments first raised in a motion for reconsideration. *See Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006). The reasoning behind this general rule is that when a party raises a new argument in a motion for reconsideration, the prevailing party is denied the opportunity to respond to it. *Id.*

**¶24** But here, the State and court were sufficiently on notice of Lopez's argument in her original motion. While the motion cited Rule

7

15.1(g) and not (e), it stated that Lopez had a constitutional right to present a complete defense, which included the ability to investigate, evaluate, and examine the physical evidence collected and preserved by the ME during the autopsy to address the causation and timing of the victim's injuries. The disclosure requirements of Rule 15.1 derive from the Due Process Clauses found in both the Federal and State Constitutions. *State v. Meza*, 203 Ariz. 50, 55, ¶ 20 (App. 2002); U.S. Const. amend. XIV, § 1; Ariz. Const. art. 2, § 4. So while Lopez did not specifically cite Rule 15.1(e) in the original motion, the State and the superior court were on notice and had an opportunity to respond to the basic principles underlying Lopez's request.

**D.     Lopez Has a Constitutional Right to Examine and Test the Physical Evidence.**

**¶25**     The superior court considered and denied Lopez's request under *Fields,* but not under the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. Under the Due Process Clause, a criminal defendant is entitled to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *State v. Lehr*, 227 Ariz. 140, 150, ¶ 39 (2011); U.S. Const. amend. XIV, § 1. "To safeguard that right, the [Supreme] Court has developed what might loosely be called the area of constitutionally guaranteed access to evidence." *Trombetta*, 467 U.S. at 485 (quotation omitted). In Arizona, Rule 15.1 codified and expanded a defendant's right to evidence disclosure even beyond this federal constitutional floor. *See State v. Jones*, 120 Ariz. 556, 560 (1978) (The Due Process Clause requires, as stated in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), that the prosecution disclose evidence that tends to negate or mitigate the defendant's guilt on request. Rule 15.1 makes such disclosure automatic.). Rule 15.1(e) provides that upon a defendant's request, the State "must make [tangible evidence] available to the defendant for examination, testing, and reproduction," unless the court orders otherwise.

**¶26**     The federal courts have held that an expert may be a necessary component of a defendant's complete defense. In *Ake v. Oklahoma*, a capital case, the Supreme Court found the Due Process Clause required the appointment of an expert psychiatrist when the defendant's sole defense was insanity. 470 U.S. 68, 72, 86-87 (1985). In *Little v. Armontrout*, the court applied *Ake* to all criminal defendants and expert witnesses. 835 F.2d 1240, 1243-44 (8th Cir. 1987). And in *Jones v. Sterling*, our supreme court acknowledged *Ake* and *Little*'s applicability to criminal cases in Arizona. 210 Ariz. 308, 314-15, ¶ 27 (2005).

¶27 The analysis of these cases applies with full force in this context. Lopez asked the court to release the tissue and organs to her pathology expert for testing and examination. The relief sought in Lopez's motion was to allow her expert, Dr. Matshes, to perform an independent analysis of the tissue and organs. In his declaration, Dr. Matshes stated there are some cases with "questions about timing and causation that require additional examination and testing. In those cases, I request and am sometimes provided with the retained tissues, organs, bones, and other specimens. In those cases, the additional review and testing frequently leads to additional information regarding timing and causation." Depending on the results of this analysis, the defense plans to use Dr. Matshes's analysis to refute the ME's conclusions about the time of death and cause of the fatal injuries.

¶28 The reasons for releasing the tissue and organs are central to Lopez's defense on the charges. Key issues in the case are how the injuries were caused, when the fatal injuries were inflicted, and whether Lopez was present when the injuries occurred. Lopez's strategy for these issues is to argue that the State cannot show that she was in the room or present when Brazell inflicted the injuries on the victim, and to potentially use Dr. Matshes's findings to cast doubt on the State's timeline. Dr. Matshes asserts that his analysis will be more accurate if he can access the same materials as the ME, a foundational concept on which expert analysis, disclosure, and discovery is based. Because this effort is critical to Lopez's defense, and the reliability of Dr. Matshes's analysis depends on access to the tissue and organs, the release of those materials, which the ME has already captured and analyzed, is necessary to Lopez's ability to present a complete defense. *See* Ariz. R. Crim. P. 15.1(e).

## CONCLUSION

¶29 We accept jurisdiction and grant relief. We vacate the superior court's order denying Lopez's motion for release and order the superior court to hold proceedings to set reasonable conditions on the release of the evidence.

MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

9